Yield Lawyers Appellate Court, 6th Division is now in session. I bring Justice Carl A. Walker to his presiding. You may be seated. Good afternoon everyone. I'm Justice Walker. I have here with me Justice Odin Johnson and Justice Taylor. And we are going to ask the lawyers if you could please start by introducing yourselves. Giving us your name. Good afternoon, Your Honor. My name is Merrick Wayne. On behalf of the Appellate Chicago Recycling Coalition. Good afternoon. My name is Stephen Collins and I represent the Chicago Department of Street & Sanitation. Thank you. And how much time do each of you need today? We'll give you up to 20 minutes and we're very flexible with the time. I will start. Counselor, how much time do you need? I'll use the maximum. Sure. And do you want to save some time for rebuttal? If I could reserve two minutes. Two minutes? Okay, we'll give you that. Alright, and same thing, you're going to use the entire time? Yes, sir. Okay, good. One second, Merrick. May it please the Court, this case comes under the Freedom of Information Act, which the General Assembly declared is fundamental to the American Constitutional form. The General Assembly declared that it is the purpose and the public policy of this state to ensure that public records are made available for inspection and copying by the public. This allows members of the public to fulfill their own obligations of monitoring the government and ensuring that it is being conducted in the public interest. This is just as important today when we are dealing with records that are created under the Chicago Recycling Ordinance, which promotes recycling programs to reduce the City of Chicago's reliance on landfills and promotes the interest of reducing greenhouse gas emissions. Now, the issue today under FOIA is whether the City has conducted an adequate search for these records. Now, there are two FOIA requests at issue here. So, is the City required to conduct a search, or are they only required to provide the information that's in their possession? They are required to conduct an adequate search. So, under the case law that is from this Court and Better Government Association v. City of Chicago, public bodies must search and aver in an affidavit all locations that are reasonably likely to contain responsive records. So, then you would be arguing that the City is required to reach out to these providers and require them to send that information to them. Our position is that the City need only ask. We are not saying anything beyond that. We're not asking the City to scour through their records or invade anyone's privacy. We're not even taking any position that if the response is there are no records, that something more has to happen. The only position here today is the City needs to simply ask these private callers and these sorting facilities whether they have the records. And their affidavits do not aver that they did this. So, it's not enough that they requested that they prepare the records, because they did make the initial request. Yes, Your Honor, they did. However, in response to a FOIA request, public body has an obligation to conduct a search. And this reminder at least occurs before the deadline, before records are submitted. So, the way it works under the ordinance is that there are 115 private callers in the City for handling picking up trash and recyclable materials. They have just to report by February 28th of the following year how many tons of the different types of waste they collected, whether it's metallic waste, yard waste, electronics, etc. And these come in a report. Now, Plaintiff here waited an entire month after that deadline to request these records, giving the haulers plenty of time to submit them ahead of time, and 43 did. 72 did not. And this is all in the record. They are in the records that the City provided to Plaintiff. There is a spreadsheet located at C88 to C99 in the record that identifies which 72 haulers are missing. From here, it shows the ones that did provide the reports in yellow with the corresponding data, and the white cells are the ones that are missing and have no information. So, we know that the haulers are required to compile these reports and send them to the City. And if they don't, they are subject to fines, and they are subject to not being able to renew contracts with the City. We also provided evidence, which is available in the record. So, what's the significance of that, Mr. Wayne? Because you conceded a moment ago that if these delinquent private haulers say they don't have it, that the City doesn't have to do anything more that's sufficient to satisfy their obligation to conduct an adequate search. So, why even discuss the enforcement mechanism? Because you're not suggesting that they're required to go out and compel the private haulers under threat of penalty and licensed non-renewal to submit the records. We are not asking this Court to make any finding about fines. We're not asking that the City go out and assess fines. If they say they don't have the records, we're not asking for the Court to make any judgment further on that. However, under FOIA, the public body has an obligation. And that is something that needs to be considered here, is that when a FOIA request is made and received by the public body, there are certain obligations that it must comply with, such as responding within a deadline, conducting an adequate search, and providing records that are not exempt under this statute. And they have not conducted that adequate search, and we are missing that step. And in order to do that, all they need to do is simply ask, because we know that these haulers are creating these reports, so if they are not... How do you know that they're creating the reports? They're required to. Well, they're required to, but there was no affidavit in the record that said these reports were, in fact, created, but just not given to the City, and therefore the City just simply needs to ask for them, and they'll have them. We don't need to make that showing, Your Honor, because the enforcement mechanism in the ordinance shows that these haulers would be creating these reports. Well, getting back to the enforcement mechanism, and I just don't understand why that seems relevant, because that seems to be going to an argument that the City is obligated to compel the private haulers to submit reports under penalty of fines, et cetera. At least for the purposes of FOIA and their obligations under FOIA, our argument is that they only need to ask. And asking the haulers if they have the report is sufficient. But the ordinance does say they should be fined for not turning in the reports, correct? Excuse me? The ordinance says that they should be fined for not providing... And that is something separate that the City can decide what fines to assess and how much. That is just to show that these haulers would be creating reports, because there's an ordinance that was set up that says haulers create these reports, and this ordinance is Chicago, Illinois Code, Section 11-5-220A, which plainly requires haulers to report them. They can't renew contracts, and yet we provide evidence of them still continuing to renew contracts. So what evidence is there in the record that these reports, and this was asked a moment ago, that these reports actually exist, they just haven't been filed? You rely on the ordinance, which is the legal obligation, but people violate the law all the time. Governments, you know, don't always enforce the law. And so, I mean, isn't that speculative? Particularly when, as you point out in your brief, the City's Inspector General has found that the City is not enforcing the recycling ordinance. Isn't the most reasonable conclusion to be drawn is that these delinquent private haulers are not submitting reports because there are no adverse consequences for that? That could be a reasonable conclusion, but at least for the purposes of FOIA and the obligations that the public body has under FOIA, is to conduct a search. Just as our position here is that they can't just assume that the records don't exist. They just need to take the step of asking, and that complies with case law from this point. Well, how do you know the City didn't ask? Because they did not avert an affidavit that they did. Because there's an affidavit, you're assuming they didn't ask. That's correct, Your Honor, because under case law, it is the public body's burden to avert that all places reasonably likely to contain responsive records have been searched. And they did not do that. Go ahead. There is evidence that the City sends out a notice every year to the licensed private haulers informing them of their obligation, and that includes a sample form. So they did ask, right? We do not know. They don't have heard when that was made. We don't know if that was made in response to this FOIA request. There's no evidence of that. And our position is that they should have asked once they began going through their files and they discovered. Your position is that they should have asked, but your position is that they are required to ask. Yes, they are required to, so they should have, in this instance. Sorry, Your Honor. And this comports with the case law. As I said earlier, Better Government Association v. City of Chicago required public bodies to ask if the records existed on these private devices. There was evidence in that case that the city officials, the mayor, et cetera, were conducting city business by text message from their personal phones. And that distinction was critical because there is a presumption of regularity that public officials are going to be complying with policies to use their public devices to conduct public business and not use their private devices to do that. So in that instance, following the federal case law, yes, having evidence that public officials were using their private devices to conduct public business was necessary. But here, the haulers are the ones who are creating the reports from the beginning. The city doesn't create the reports. The haulers are the ones who create them and submit them. So there is no question that if a report is not in the city's possession and it exists, then it must exist in the hauler's possession. In that case, wouldn't the public officials be more akin to like employees wherein the city would have more control over those individuals as opposed to third-party vendors, as in this case? While they would have more control, the degree of control is not the issue here because any amount of control makes it a public record. The city isn't disputing that these reports are public records. They don't dispute that the raw data for Part 2 of the request would be public records. The question is, and that's why it falls within their control, because they have that enforcement mechanism, making it fall under their control and a public record under 2C. Now, similarly, under Chicago Tribune, the College of DuPage, this is where the public body was required to ask a third party that it was contracting with for records that were public records. And that is very similar here because we're dealing with private haulers that are contracting with the city to collect waste. So under Chicago Tribune, the College of DuPage would stand to reason that the city would just need to go ask the contractors for the record in response to the FOIA request. Similarly, under Heights, the Waubonsie Community College, this one holds that raw data is a public record. It doesn't have to be compiled in a report, which for the residual rates and contamination data portion of the request, the city merely submitted an affidavit stating that it doesn't have the records because it doesn't submit a report to itself. However, that, again, misses the point because the raw data would still exist within the sorting facilities, and we provided evidence of that with an affidavit from Mr. O'Brien that is located in... I'm just trying to find the page number. Are the sorting facilities required to submit their raw data under the ordinance? No. So what... To clarify the sorting facilities, so you have the 150 haulers that handle waste pickup. Then as for blue cart pickup with recycling, you have six zones, and the city handles two of the zones. So for Part 2 of the request, which sought the residual rates from the contaminated recycling material, the city provided reports for four of those six zones, being the four zones it does not manage, and that is because the city received reports from entities that manage that. However, for the two zones that the city handles the pickups from, it did not provide any data, and its explanation in its affidavit was that it does not compile reports and submit it to itself, but it did not avert... The city provided all that it had. Well, it just said in a report. Now, under heights, it doesn't meet... Well, that was the trial court's finding. That was the trial court's finding, that the city provided all that it had. Yes, and the trial court erred in not ordering the city to perform an adequate search by asking those facilities for the raw data. Because all they averted was they don't have it in a different form that plaintiff did not request. The city doesn't have a contractual relationship with these sorting... Well, I suppose they do. They do. They do. Okay. So is there something in the contract between the city and the sorting facilities that requires a sorting facility to accumulate data regarding what's recyclable and what's not? There's no evidence in the record that would answer that question, Your Honor. Okay. So what's the basis of Mr. O'Brien's... So what is the basis of his affidavit that this sort of information, this data can be obtained from the sorting facilities? So it's based on research that he's done on recycling throughout his decades of experience, whether he identified that research, did he cite to it? He did not, Your Honor. So, I mean, isn't it then just a conclusion? It is based on his experience that by calling the facilities, one would be able to get the raw usage data just from them by doing that. And since that was not averted to being done in the affidavit that the city submitted, the city has failed to conduct an adequate search. Because all we're asking, again, is they just need to ask. When they receive a form request, they need to conduct a search of all places that are reasonably likely to contain records. And if there is a place that is generating this data, either in a report because it's a private holder or because it is a sorting facility that is sorting out these materials and generating the data then, they just need to ask them for the record. Because you know that the records are coming from these locations, a reasonable search must include that. And our position is that they just need to ask. We're not asking for anything invasive, nothing more on top of asking. Oh. Well, Counsel, that sounds eerily close to a duty to supplement, which is not found in the statute. Basically, you're saying if you don't have it, you're to go find it and perhaps as it comes in, you're also supposed to provide it to us. Because you're saying just ask. So they go to a vendor and they ask, you know, I'd like this data. And then as the data comes in, you're asking that they then provide it to you. It's very similar to a duty to supplement, which we don't find in this statute. So if they had, I can see how it would look that way in the course of the lawsuit playing out. However, in responding to a FOIA request, the public body wouldn't supplement throughout. Rather, they would receive the FOIA request. They would acknowledge receipt of it as they're required to under the statute. They would analyze it. They would determine where the records would be. And here, when you're dealing with these hauler reports and this residual data, you know that it's going to be with these haulers. You know they're going to be in these facilities. So a piece of the search that you would be doing would be asking. And they also would know that, as I stated, that reports they have would be in this one location. So they look there, too. So after all that searching is done, then a response is made to the requester. And that is the proper mechanism for how public bodies should be responding to FOIA requests, is that they conduct an adequate search in response to it and then produce the records that they have in their possession. Okay. Mr. Overby, you're out of time unless there's more questions. If you want to make a final point, I'll let you make the final point. My final point would just be that this Court should reverse the circuit court's ruling and remain. You can do that on rebuttal. You're coming back. It's true. Okay. Thank you. You still have two minutes left. Counsel, please report. Mr. Collins. May it please the Court. The Department of Streets and Sanitation has discharged its FOIA obligations with respect to both types of records that are at issue in this appeal. First, in response to plaintiff's request for all the reports, the Department conducted a reasonable search and produced all of the responsive reports that it found. And second, with respect to contamination data, the Department does not keep such data with respect to the collections that the Department performs itself,  For these reasons, the grant of summary judgment to the Department should be affirmed. But I'd like to begin with a further discussion of the hauler reports. As the Department explained in its detailed affidavits, these reports are prepared by private haulers who are required by ordinance to submit their reports to the Department every year. So if they're required to submit them every year, why don't you have them? Well, it appears, Your Honor, it's undisputed in this case that some haulers did not submit their reports to the Department. Right, and the city could then fine them for not producing them or threaten to fine them if they don't produce them. So wouldn't it be really simple for the city to just simply ask? That's the argument that Mr. Loewe is making. The city could just ask. Well, Your Honor. Without fining them. Sure, Your Honor. Well, FOIA, of course, imposes an obligation to conduct a reasonable search. And that, in turn, requires the public body to look at the locations where responsive records are reasonably likely to be located. Which would be with the particular providers, right? Actually, no, Your Honor. In this case, it would be in the possession of the Department itself. Well, it's not in the possession of the Department yet because they haven't provided it. I think counsel is just asking that the city just simply ask for the reports. Yes, I understand that is a plaintiff's argument. But it actually defies common sense that a hauler would create a report and then keep it in its own files and withhold it from the Department rather than submit it to the Department. So you don't believe sometimes, you believe that when there's an oversight, it's because people don't have common sense? Because people prepare reports all the time and don't send them where they need to go. Sometimes a person who works for a law court completes all of his work, but he hasn't sent it to the manager's partner yet or to a partner yet. So you believe that he has no common sense. Is that what we're saying? Let me explain what I mean by that. So there are a couple of bases for that point that I made. First, these hauler reports are only created by private haulers because a city ordinance requires them to submit them to the Department. So in other words, these are not reports or records that private haulers prepare for themselves. They prepare them for the center. They did not send them to you. So what counsel is simply saying is that, ask, you're assuming that they don't have them because they didn't send them, but did the city make a request of anyone to send reports? I think there were maybe 70 that did not send reports. That's about right. And the city doesn't feel it has an obligation to simply say, do you have a report? I think counsel's argument is that he's not saying that the city should force them to now complete or create a report. He's saying that if there is a report, send it. But the city hasn't asked. Well, maybe the city has asked. We don't know. Not upon receiving plaintiff's FOIA request. The city did not ask. That's right. There's nothing to do with that. There's nothing to do with his argument. His wife had the city ask. So he's now saying that the city did ask prior to receiving the FOIA request. Well, as a matter of course, the department does remind haulers of their obligation to submit their reports. And when they don't submit the report, the city's position is that it's because they don't have the report. At least with respect to this case. The so-called missing reports, the only reasonable inference to draw from the record is that the report does not exist. Exactly. You're right. Yeah. And one other point I wanted to make is that there's no reason that a hauler would go to the effort of creating one of these reports, only to then withhold it from the department. Because, again, these are not records that private haulers prepare in the regular course of their business operations. Well, I'll tell you what defies common sense for me is that the city would have an ordinance that requires the haulers to provide these reports. The haulers routinely do not, at least that's what I gather, they routinely do not submit the reports. The majority of the haulers did not submit a report and that the city would not do anything about it. They would not impose the fine. And then they would say, we don't have to tender anything because guess what? We don't have it. So they stick their head in the sand that no one's complying, basically thumbing their nose at the city. And that's okay. And so as a result, you then don't have to comply with the FOIA request because, you know, as far as you're concerned, your hands are clean. You don't have it. But you have an opportunity to obtain the requested documents. Well, for purposes of FOIA, the obligation on the public body is to conduct a search at locations that are reasonably likely to contain responsive records. And as the city or as the department has explained in its affidavits, these reports are prepared by haulers. They are submitted by e-mail to the department and the department saves those reports at a specific location on its computer system. And that by searching that specific location, the department will locate responsive reports. Now, and of course, FOIA only obligates public bodies to produce records that are in existence at the time of a request. And moreover, this case comes to the court on a grant of summary judgment to the department on the question of whether the department conducted a reasonable search. The department has explained through its affidavits that it searched the location that is reasonably likely to contain responsive records. And to avoid summary judgment, plaintiffs need some kind of evidence, something in the record to suggest that there are responsive records outside of the location of the department's own files. And respectfully, nothing in the record in this case suggests that responsive reports are likely to be located in the files of the haulers themselves for the reasons we've discussed. So that's what your defense to the private hauler reports comes down to, is that there's no evidence in the record to suggest that these missing reports actually exist. Precisely, Your Honor. Yes. And you also can see, for purposes of argument, that to the extent that such records do exist, that is, these delinquent haulers in fact created the record but didn't submit it, that that would be subject to FOIA because it would be within the city's possession or control? Well, Your Honor, we don't dispute that a hypothetical report that exists only in the files of one of these. Yeah, we don't dispute that a hypothetical report that exists only in the files of a private hauler could qualify as a public record, perhaps on the ground that it was prepared for, to use the language of FOIA's definition of a public record. We just say that there's no reasonable basis to conclude that any such reports actually exist. And indeed, this case is comparable to cases involving personal e-mail and text message accounts of public officials. So how could the appellant find out if the reports exist at the place of business of these third-party haulers? Well, Your Honor, it's possible to say if the Inspector General, in the course of his investigation, found that there were private haulers that were in fact preparing reports by just keeping them to themselves for whatever reason, that might constitute evidence of the existence of these responsive reports that exist solely in the files of the haulers themselves. That might be something. But our appellant, how would they find out? If the Inspector General, say, found that and made it part of his findings in his report. But comparing this case to cases involving personal e-mails and text messages, in those cases, courts routinely refuse to order public bodies to search personal accounts in the absence of evidence that those officials actually used their personal accounts to conduct public business. And the same is true here, where in the absence of evidence that these private haulers contain responsive reports that the Department hasn't already produced itself, the Department should not be ordered to conduct the more expansive search that the plaintiff is arguing for. But that's different, because that comes back to Justice Johnson's original question to you. There's an ordinance that says that they're required to prepare or create these reports. And when they don't, they're fined for not creating the reports. And you're saying that the city has absolutely no obligation. Because it seems to me that there may even be a bigger concern here. So I'm going to ask you, what do you believe the reason is that they even want the reports? Your Honor, I'm sorry, I'd rather not speculate as to the reason they want the reports. For purposes of FOIA, I don't think that's – it doesn't change our obligation to produce responsive records, certainly. But since you mentioned the ordinance itself, I'm glad you did. I want to focus on the language of that. Because by its plain language, it actually requires haulers to submit their reports. Not just create them, but to submit them to the Department. So if anything – I only used create because you've assumed this entire time that the reports don't exist. So I was just trying to be in line with your thing. Sure. Yeah, and of course, to submit a report to the Department, a hauler would have to create it first. But the operative language in the ordinance itself imposes an obligation on the hauler to submit the report to the Department. And so if anything, that language supports the Department's position that any responsive reports in existence at the time of the plaintiff's request would be in the possession of the Department itself, because it would have been submitted to the Department. If there are no further questions about the hauler reports, I would like to address briefly the contamination data part of the request. In response to this part of the plaintiff's request, the Department produced contamination data that it had received from private haulers who had submitted their data to the Department. As the Department further explained in its second affidavit, it does not keep this contamination data with respect to the collections that the Department performs itself. And since FOIA does not – Keep. Is that the right word? Yeah, keep is exactly the right word, Your Honor. This is at C-130, the second – I assume that it exists. Well, yes. So that's why I'm asking, is that the right word? Yeah, well – To keep something – if I keep this, it exists. And so are you conceding that the contamination data actually exists for the two zones at the city services? No, Your Honor, we're not conceding that it does exist, because I think that the most natural reading of the affidavit, where the affiant says that the Department does not keep this data, it means that the data was just never generated in the first instance. So the haulers are – or the city, the Department, has employees going out, collecting this information, and there's no recordkeeping with respect to this process? There's just – there is not responsive data with respect to the collections. Not responsive data. Yeah. This contamination data specifically. And we're just – Can I just come back to that for a second? Yeah. Because I thought Justice Taylor and Justice Johnson were going to stay with that. But so you're saying that they do – the data does exist, but the city does not retain it. When you use the word keep, is that what you're saying? Well, I'm just using, of course, the word that was used in the affidavit itself. And I think the most natural reading of the affidavit, where it says that it does not keep this data, is that it just doesn't have it, period. It's not a record that exists in the possession of the public body. And so since FOIA does not obligate public bodies to conduct searches of records – or searches that would be futile, the Department in this case had no obligation to conduct a search for nonexistent data. Sorry. I don't know. Just for a point of clarity. So you're saying that you don't keep the data or have data that separates out the non-recyclable from what's recyclable. Yes. Okay. The contamination data. Okay. Yes. But you have data as to what's collected overall. It's just not separated out, which is specifically what was requested. Well, I'm not sure about the broader scope of data that the Department does keep in general. I'm focusing on this particular type of data that's the subject of the plaintiff's request here, this contamination data. And I just want to draw the Court's attention to the affidavit's explanation that the Department doesn't keep that data. And I don't know if this is in the record or not, but I'm just trying to understand the way it works. So the city has these two zones at its surfaces, and it picks up recyclables. And then it transports those recyclables in these blue cart garbage trucks to a sorting facility. And it says, here you go. And the Department of Streets and Sanitation employees, as they're collecting these materials, they're not sorting through it. They're not looking through and trying to determine what percentage is recyclable and what's not. It's all turned over to the sorting facility, and somebody then there deals with it. And what they do with it, I don't know if there's anything in the record about it. But Mr. O'Brien averts that the sorting facilities have the data. They go through it. They have a pile for recyclables, and they have a pile for non-recyclables. And they come up with some percentage. I don't know. I'm speculating here, but is that the way it works? Well, I think speculating is the right word to describe Mr. O'Brien's affidavit. He doesn't identify any of these sorting facilities. He doesn't explain the basis for his apparent knowledge that they would keep such data. And moreover, it's not even apparent that for purposes of FOIA, such data that is created by and kept by one of these private sorting facilities would constitute a public record that's even subject to FOIA. Again, how would a layperson get this information? Well, the contamination data for the department's own collections, just as the department explained in its affidavits, just does not exist. At least not the specific type of data that the planes are fast for in this case. That's all the record in this case reveals. Wouldn't it be fair inference to draw that the sorting facility, by the very nature of the business that it's engaged in, sorting recyclables would have some sense of what percentage of the material they receive and the blue truck is actually recyclable and what's not? Because presumably they're in it to make some money and they're going to make money on the recyclable end and not on the garbage. That could well be, Your Honor, but especially the record in this case just does not support that finding. Because the only basis for any kind of finding about any private sorting facility is the O'Brien affidavit. And it just is conclusory and it lacks any detail that would support a finding that there are responsive public records in the possession of any of these sorting facilities. And moreover, I want to emphasize that the plaintiff's argument with respect to this issue relies on its view that the department's affidavits address only reports of data and not the data themselves. But that's clearly not what the city's affidavits say. As we've been discussing, the second affidavit states that the department just does not keep the data itself. And so for that reason, there is no responsive records for the department to locate and summary judgment with respect to this issue. But isn't this the same problem with the other issue to the extent that the city has not asked? Because the city could ask the recycling facility what portion of the collectibles are contaminated or cross-contaminated and what percentage are actually recycled. The city could just ask because chances are the recycling facility would know. Well, Your Honor, respectfully, the record in this case just does not support a reasonable conclusion that any sorting facility, which again, unnamed in the record. We don't even know what these facilities are. But there's no basis to conclude that any sorting facility actually. Well, the record we don't know, but the city, the Department of Streets and Sanitation knows. Well, you know, I mean, perhaps, but again, this case comes to the court on a granted summary judgment with respect to both of these records. But see, that's what concerns me, which may not, I mean, it's not necessarily a legal concern per se, but the lack of accountability with respect to the city and, you know, the operations in this department. You know, that we have these contracts and that they're not accountable. We're not keeping any data. That's, you know, the impression that the record would give us. Sure. Whether or not, you know, maybe that's not the entire picture. But the picture that we have at this juncture is that this data doesn't exist. And to me, that begs the question as to where is the accountability to the city? They're not enforcing anything. You know, that's a real concern. I understand, Your Honor. But for purposes of freedom, of course, a public body can only produce what it has. Sure. And that's what the Department has done here. I do want to address one more point. Your Honor has been echoing the argument Plaintiff has been making about how the Department just needs to ask for this kind of information. That's all we have. All we have is the Plaintiff's arguments. I do want to say that the expanded search that Plaintiff is contemplating here might not be as simple as Plaintiff argues in the sense that these additional inquiries involve contacting potentially dozens of private haulers that the Department does not directly control. We don't control their employees. We don't control their files. And we would be reliant on them to respond to us with their information. Well, but you do control them in the sense that you license them, right? That's true. Without the license, they can't engage in that business. That's true. But we would nevertheless be reliant on them to respond to us. And certainly in future cases, if public bodies generally going forward have an obligation to conduct this kind of inquiry, those public bodies may well have difficulty responding within FOIA's short five-day timeframe to respond to a FOIA request. And so this is very different from the situation, say, where a public body might be searching the accounts of its email or text message accounts of its own employees. These are entities that are outside of the city's control. And that's another reason why some of the – Well, I don't think the five days has anything to do with this case because the council has been waiting months at this point. Sure, yeah. I had in mind future cases where, say, if public bodies are bound in future cases to conduct this kind of broader inquiry upon receiving a new FOIA request, public bodies could – Well, let's get more into that. So if we were to find in this case – and we realize that what we do in one case affects – it has a broader effect – that the city is required to at least ask whether or not these – the other haulers have that particular data or also require the city to ask the recycling facility whether or not they have the data on contamination, how does that create a problem with other FOIA requests? Tell us where you see a floodgate issue. The floodgate issue is that upon receiving a request in the future, public bodies may well find themselves in a situation where they have to do this kind of outreach, these kinds of questions to private parties that are not within the control of the public body itself. Well, that would only merely enforce their own ordinance or statutes. Well, but of course, I mean, the public body takes a FOIA request as the world exists at the time of the request. Sure. It can only do what it can with that request. And if a public body does need to do this kind of extensive inquiry to private parties that are not under the public body's control, the public body will be reliant on these private entities to respond in a timely fashion. There are possible concerns, well, what if a public body doesn't respond at all? Then what kind of follow-up obligation would a public body have? So there are difficulties here. But I do want to emphasize that in this case, the department fulfilled its FOIA obligations because it did conduct a reasonable search by searching the location that is likely to contain responsive records. Well, wouldn't that be the haulers also, that it's possible that the information could be there, too, and they just have not submitted the reports? And it sounds like that you've told us that after the FOIA request was received, the city did not, I should say the city, the Department of Streets and Sanitation did not even ask whether or not there were any reports with the 72 haulers that had not provided reports. Is that a correct statement? Yes, that kind of inquiry did. And your position is that the city has no obligation to ask under FOIA because all they were required to do is search where? Because it says that they're required to make a diligent inquiry. Yes. The department had an obligation under FOIA to search all locations that are reasonably likely to contain responsive records. And wouldn't the haulers be one of those locations? Especially, no, Your Honor. And the bare possibility that a hauler might have created a report and then kept it to itself and withheld it from the department is not sufficient to show that the department's search was not adequate. Justice Johnson has said this like three times already, and you're saying all of this is the case despite what the ordinance says. Yes. Because the ordinance requires reports that are created to be submitted to the department. So that ordinance, that enactment supports the department's position that any reports that were created would be in the possession of the department. And for that reason, the department conducted a reasonable search. And if the Court has no further questions, we ask that the judgment of the circuit court be affirmed. Thank you. No, thank you. Thank you. Thank you. I want to ask you a question right off the bat. Okay. Mr. Collins made a point that if the city is dependent upon third parties, such as the private haulers and assorting facilities to, you know, it could never comply with a five-day period of time to respond because it's all out of its control. What's your response to that? So under the FOIA statute, it does allow for an extension to be taken by the public body of five additional days, and it does allow for public bodies and requesters to agree to additional extensions. Additionally, the FOIA statute has Section 7-2, which states that records that are in the possession of an entity that is contracting with a public body, those records are public records. So the General Assembly has already contemplated that public bodies have to go to contractors to get records, and they have to do that within five business days or with an additional five-business-day extension. So this concern that the city has raised is completely unfounded and is disingenuous under the statute. So what if that provision regarding third parties that the city contracts with and the records that they have in their possession, is there any timing provision that the General Assembly included with respect to submitting those records or producing those records? Because I can imagine at some point you might say, I'm not agreeing to any further extensions, you know, and we know that these records are out there, then what? Certainly, and the issue, though, is that, and this is what was identified in the Chicago Tribune v. DuPage case, is by not having public bodies going to these contractors and asking, it effectively allows public bodies to hide records with the contractors. And as far as there is no special timing for contractual records under 7-2, it still applies to the timing that's under Section 3-D of FOIA. But there's no hiding concern here. The city produced everything it had. Sure. But here there, excuse me, the, at least for getting a response, and this is speculation, but it goes into what the contracts themselves have. And certainly if a public body is going out and contracting away its own duties to conduct public business and it's having other private entities doing that, they would also make sure that it is able to comply with its other obligations, such as FOIA. And certainly you would expect that contracts could have a provision, and I've seen this many times where contracts say, records that you generate as part of this are going to be subject to FOIA. And they could include other enforcement mechanisms, and that is something for public bodies to do with those that they are contracting with. And they make those decisions based on the laws that already exist, such as the FOIA statute, which requires these responses in five business days, and requires public bodies to conduct an adequate search. Now, yes. But counsel, where does the adequate search end? Essentially, they asked, had the haulers had reports, they would have turned them in. So let's say they ask again, and the same people who were dilatory in responding previously, who failed to turn in their reports, they still don't turn them in. Then what? Then that is a search. Then the inquiry, as far as the search goes, is done then. So you would be satisfied if they just asked, period, regardless what the results of that ask were? Yes. And that is the same position that the requester took in Better Government Association v. City of Chicago, where the conclusion was that they just had to ask. And going back to that Chicago Tribune v. DuPage College case, that polling that the public body needed to ask the entities they're contracting with did not require evidence that records exist. One thing I just want to touch on a few points. They did not dispute that a report in the hauler's possession that has not been submitted is a public record. So that's basically it. There is a universe of records. That's right. They conceded that their only defense is that there's no evidence in the record to suggest that these delinquent reports actually exist, but are in the hands of the private haulers. And they were just assuming that they do not exist, which does not satisfy their burden, because it stands to reason that this is a location that would reasonably likely contain the records, because that's where they would be generated, is in the possession of these haulers or with these sorting facilities. It's speculation, though, isn't it, that these reports actually exist, but they just haven't been submitted? I mean, isn't that speculative? That's – if they – what we are saying is that these reports are only created in one place. They are only created by a hauler. So if the city doesn't have the report, the only other place it would be would be with the hauler. So a reasonable search would be looking at those two locations. They look in their computer system that they have, and then they ask the hauler. And that's just a reasonable search, and that's all we're asking that they do here. Finally, one last piece. Robert, before you go into your final, because you've conceded this point, but I'm going to push back a little bit on it. We – you've conceded that if they just need to ask, and if the reports don't exist, they've done all that you'd be asking them to do or that you'd be wanting them to do, correct? Yes. Well, but why not – if the Ordinance requires these reports, and the Ordinance says that when the reports are not created that the haulers should actually be fined, why not require the haulers to create the reports? Because this is about – this could be a great public concern as to what is really going on with recycling. I mean, everybody is aware of what people are saying about recycling. I'm not going to get too much into it. I just see that you pay attention or you don't, but there are some comments being made about this being a really shady situation all over the country. Your Honor, I don't disagree with any of that. Personally, I could weigh in on what I would prefer. However, under FOIA, there is no obligation for public bodies to create a new record. Even where the statute says that they're required to create these reports? This is the City Ordinance that says this. I said statute, but it's the City Ordinance that says that they're required to create these reports. Then it was – So if they're required to create the reports, and then when they don't create the reports, they're fined. So the City has a lot of muscle here. You didn't send us your report. We need your report within five days, seven days, ten days, thirty days. And if we don't have your report, we're going to levy a fine against you of whatever amount the statute allows, the ordinance allows. So why is it that you – why is it that we're willing to settle for just all they need to do is ask if they don't have them, it's okay. Maybe it's not okay. Because the ordinance says they're required to do this. This is – the ordinance violation is what it really is. It is an – as far as it's linked to a parking ticket, an ordinance violation. It is. And for them to go and make that ask, and that would reveal that the haulers are not submitting these reports and creating them, and that can create plenty of information for the public to draw from about the haulers here. But as far as enforcement beyond FOIA, that's just not in the statute. As far as what is on appeal today is just the search issue. And that's all you're asking for? Yes, Your Honor. And we are asking it where it is consistent with the case law we've cited. Well, counsel, wouldn't your case have been a lot stronger and our job a lot easier had perhaps you asked some of the haulers that you knew existed to see if they had reports that just had not been turned in? Pursuant to the case law, if you had said, hey, there's this hauler that has a report, why didn't you produce it, city or department? Are you saying that Chicago's Techland Coalition should go to the haulers? You could have reached out and sent a letter to some of the haulers. It's not that many. Certainly. But there is no requirement under the FOIA statute for a plaintiff to do that. Under FOIA, if a public body receives a FOIA request, they have obligations under the statute. But doesn't the case law say that you have to present something that tells us that it exists and it just was not produced? No, we're not at that stage in the case law because this is a location that's reasonably likely to contain records. The only time where it goes beyond that and after a public body has averted its search to those reasonably likely places to contain records, that's when the burden shifts and that the requester needs to present evidence that the records have existed. But we are not at that stage yet because the burden hasn't shifted. If there's no other questions, I would just like to conclude on one point in response to some questions. Before you go ahead, clear up your point first. Okay. I just want to clarify that the residual rates data that's in the sorting facilities are public records under Section 7-2 because they would be records coming about that contractual relationship. In your prayer for relief, you're asking that the Department of Streets and Sanitation should be required to obtain and produce the 72 missing hauler reports from the private haulers and it should conduct a search for any underlying residual rate contamination. So you're asking us to have them to, that they be required to obtain and produce. So if they're required to obtain, the only way they're going to obtain is to use their muscle and say, hey, give us this report or we're going to fine you. That's what you're asking for your prayer for relief. And that's not what you've been arguing here today. But that's what you're asking for. Now maybe you didn't write the brief. I don't know. What we meant by that is order them to search and obtain by asking and then producing what they obtain through that ask. Okay. Do you have any final statements? Finally, for these reasons, this court should reverse the circuit court's ruling and the city should conduct an accurate search by asking these private haulers and sorting facilities if they have the records. Just one moment. Any questions, Justice? No. Any questions, Justice? Okay. Thank you. Thank you. And thank you both. Excellent job. Excellent briefing. Excellent argument. We appreciate your excellence. So good job to everybody. Thank you. Have a good day. We're adjourned. All rise.